UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILBERT ERNESTO ALARCON-MENDOZA (A# 215-580-976),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION,

Respondent.

No. 1:26-cv-08730 DAD SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I. Factual and Procedural History

Petitioner is a citizen and national of El Salvador who entered the United States without inspection near Rio Grande, Texas, on April 1, 2018, as an unaccompanied juvenile. ECF No. 10-1 at 2-3 (Form I-213). U.S. Border Patrol agents encountered Petitioner, issued him a Notice to Appear ("NTA"), and transferred him to the Southwest Key Case Padre Juvenile Facility in Brownsville, Texas. Id. at 3. On August 3, 2018, immigration officials released Petitioner to his cousin in Los Angeles, California. Id. at 3. An immigration judge ("IJ") subsequently terminated Petitioner's removal proceedings and approved his I-360 Petition for Special Immigrant Juvenile

Status. Id.

Petitioner, now 24 years old, has a criminal history in the United States. On June 10, 2025, he was convicted of possession of a firearm by a felon under California Penal Code § 29800(a)(1) and sentenced to 16 months in prison.[1] ECF No. 10-1 at 21-22 (FBI rap sheet). On January 20, 2026, Immigrations and Customs Enforcement ("ICE") took Petitioner into custody from state prison and issued him an NTA and I-200 warrant for arrest.[2] Id. at 9-11 (NTA); id. at 12 (I-200). Petitioner is currently detained at the California City Immigration Processing Center within this judicial district. ECF No. 1 at 1. His individual hearing in immigration court is scheduled for November 16, 2026.[3] ECF No. 10-1 at 5.

Petitioner filed his pro se petition on October 23, 2026, challenging his ongoing detention under the procedural (Count Two) and substantive (Count Four) components of the Due Process Clause of the Fifth Amendment. See ECF No. 1 at 7. He seeks immediate release and an injunction prohibiting his re-arrest absent a pre-deprivation hearing before a neutral arbiter. Id. at 8. Respondent acknowledges that Petitioner is detained under 8 U.S.C. § 1226(a) and does not object to him receiving a bond hearing once he requests one pursuant to the relevant regulations. ECF No. 10 at 2-3. However, Respondent maintains that the Court should deny the petition for failure to exhaust administrative remedies. Id. at 3-4.

## II. Legal Standards

### A. Constitutional Standard

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a

---

[1] It appears that the felony conviction on which this gun conviction was predicated was a 2024 conviction for taking a vehicle without the owner's consent. ECF No. 10-1 at 20 (RAP sheet).

[2] The petition states that ICE took Petitioner into custody on May 1, 2025, but this appears to be around the date of his last arrest by local law enforcement. See ECF No. 10-1 at 21-22.

[3] The record shows that Petitioner, through his immigration counsel, requested and received a continuance of his individual hearing to November 16, 2026, in order to pursue adjustment of status. ECF No. 10-1 at 7-8 (IJ Order Oct. 26, 2026).

protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Framework**

Respondent acknowledges that 8 U.S.C. § 1226(a) governs Petitioner's detention. The Supreme Court discussed this statutory authority governing Petitioner's detention in Jennings v. Rodriguez, 583 U.S. 281 (2018):

> Even once inside the United States, [noncitizens] do not have an absolute right to remain here. For example, a [noncitizen] present in the country may still be removed if he or she falls "within one or more . . . classes of deportable [noncitizens]." [8 U.S.C.] § 1227(a). That includes [noncitizens] who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See §§ 1227(a)(1), (2).
>
> Section 1226 generally governs the process of arresting and detaining that group of [non-citizens] pending their removal . . . Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of [a non-citizen] 'pending a decision on whether the [non-citizen] is to be removed from the United States.' § 1226(a). 'Except as provided in subsection (c) of this section,' the Attorney General 'may release' [a non-citizen] detained under § 1226(a) 'on ...bond' or 'conditional parole.'

Jennings, 583 U.S. at 288.[4]

"When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. The [noncitizen] will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). If a noncitizen wishes to contest the Attorney General's initial custody determination—i.e., the denial or amount of bond—the noncitizen has a right to do so before an immigration judge "any time before an order [of removal] becomes final." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). After a custody redetermination hearing, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Rodriguez Diaz, 53 F.4th at 1197 (citing 8 C.F.R. § 1003.19(e)).

**III. Due Process Analysis**

The undersigned infers from the factual record that the Office of Refugee Resettlement ("ORR") placed Petitioner in a juvenile facility, and later released him to his cousin-sponsor, pursuant to the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). See 8 U.S.C. § 1232(c)(2)(A); Perez-Mendez v. Warden, California City Corr. Ctr., No. 2:26-CV-01272-DAD-AC, 2026 WL 947263, at *2 (E.D. Cal. Apr. 8, 2026) (discussing TVPRA's framework for placement of unaccompanied minor children). ORR's release of Petitioner to his cousin in August 2018 then reflects a determination that he was not a flight risk or danger to the community. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a "sponsor" . . . so long as the minor is not dangerous . . . . Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.") (citing 8 U.S.C. § 1232(c)(2)(A)), aff'd sub

---

[4] The undersigned changed "alien" to "non-citizen" in these passages. This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years. See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). "As such, 'DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances.'" Funes v. Warden, California City Corr. Ctr., No. 1:26-CV-03710 (AMO), 2026 WL 1541796, at *2 (E.D. Cal. June 1, 2026) (quoting Singh v. Noem, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026)).

Against this backdrop, "[n]umerous courts have found that where an unaccompanied minor is released by the ORR to a sponsor, he obtains a liberty interest in his continued freedom, even after reaching adulthood." Funes, 2026 WL 1541796, at *2 (collecting cases); see also F.S.S.M. v. Wofford, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *4 (E.D. Cal. Dec. 9, 2025); P.A.H.E. v. Noem, No. 1:26-CV-01164-DJC-JDP, 2026 WL 451662, at *2 (E.D. Cal. Feb. 17, 2026). Accordingly, the undersigned finds that Petitioner has a protected liberty interest in his continued freedom from detention. See F.S.S.M., 2025 WL 3526671, at *5 (finding the petitioner retained a liberty interest "based on the government's prior representation that he was released pursuant to the TVPRA and because he spent five years at liberty relying on that representation.").

Consistent with the Court's reasoning and rulings in substantively similar cases, the undersigned finds that the Mathews factors, on analysis, show that Petitioner's Fifth Amendment right to procedural due process was violated by his re-detention without a pre-deprivation hearing.[5] See Guaura v. Warden, 26-cv-01124-DAD-AC (HC), 2026 WL 895694 (E.D Cal. Apr. 1, 2026) (applying Cajina v. Wofford, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083 (E.D. Cal. Nov. 21, 2025), to grant petition and order immediate release on habeas petitioner's procedural due process claim); Lopez v. Albarran, No. 1:25-CV-01890-DAD-SCR (HC), 2025 WL 3691082 (E.D. Cal. Dec. 19, 2025) (same outcome as to a request for a temporary restraining order, relying on Perez v. Albarran, No. 1:25-CV-01540-DAD-CSK (HC), 2025 WL 3187578

[5] Respondent's argument, premised on Rodriguez Diaz, 53 F.4th at 1213, that § 1226(a) provides adequate process is unavailing. See ECF No. 10 at 3. "Because petitioner was previously released [by ORR] and remained at liberty for a period of time, Rodriguez Diaz is inapplicable to this case." Lnu v. Warden, Golden State Annex Detention Facility, No. 1:26-CV-06987-DAD-SCR (HC), 2026 WL 2971947, at *1 (E.D. Cal. Oct. 3, 2026).

(E.D. Cal. Nov. 14, 2025)); Ramos v. Warden, California City Corr. Ctr., No. 26-CV-01026-DAD-JDP, 2026 WL 836368, at *2 (E.D. Cal. Mar. 26, 2026) ("[T]he appropriate remedy is petitioner's immediate release where, as here, respondents have failed to provide authority for petitioner's detention.").

Regarding the appropriate remedy, the undersigned observes that Judge Drozd has found post-deprivation remedies appropriate in cases with particularized flight risks that "urgently require arrest" and where a pre-deprivation hearing "would have been impracticable and/or would have motivated [petitioner's] flight." O.A.C.S. v. Wofford, No. 1:25-cv-1652 DAD CSK (HC), 2025 WL 3485221, at *4 (E.D. Cal. Dec. 4, 2025) (quoting Martinez Hernandez v. Andrews, No. 1:25-cv-1035 JLT HBK, 2025 WL 2495767, at *11–12 (E.D. Cal. Aug. 28, 2025)). Respondent generally cites Petitioner "significant criminal record," ECF No. 10 at 2, but has not identified any particularized flight risk that justified his arrest without pre-deprivation notice and hearing. Nor does Respondent argue that Petitioner's convictions qualify him for mandatory detention under 8 U.S.C. § 1226(c).[6] Moreover, because Respondent can subject Petitioner to ordinary conditions of release, including electronic monitoring, any potential risk of flight can be mitigated.

While Respondent maintains that it is Petitioner's responsibility to seek a custody redetermination hearing before an IJ, they have not submitted evidence that ICE provided the perquisite, initial custody determination (Form I-286) either prior to or contemporaneously with detention. Nor has respondent that Petitioner received any other notice of his right to seek a custody redetermination hearing during his many months in detention. Petitioner cannot be expected to have availed himself of an administrative remedy about which he received no notice. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (holding that in order to comply with due process "notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their

---

[6] Petitioner's Form I-213 states that state prison officials identified him as having "removable convictions." ECF No. 10-1 at 7. However, his NTA does not charge him as inadmissible for conviction-related reasons, id. at 9, and Respondent's assert here that he is subject to § 1226(a).

appearance"). For all of these reasons, the undersigned finds that release is the appropriate remedy. See Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility, No. 1:26-CV-05661-DAD-SCR (HC), 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (identifying ICE's failure to provide an initial custody determination as a § 1226(a) violation warranting release).

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondent be ordered to immediately release Petitioner WILBERT ERNESTO ALARCON-MENDOZA (A# 215-580-976) from their custody. Respondent may impose ordinary conditions of release, including electronic monitoring.

3. At the time of release, Respondent be required to return all of Petitioner's documents and possessions.

4. The Clerk is directed to serve the California City Immigration Processing Facility with any order for release.

5. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

6. Any final order entered in this case not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

7. The Clerk of Court is directed to enter judgment for Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v.

Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 12, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE